## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MELISSA BOGLE,
    *Plaintiff*,

v.                                          No. 3:23-cv-00323 (VAB)

DEPARTMENT OF MENTAL HEALTH
AND ADDICTION SERVICES ET AL.,
    *Defendants*.

## RULING AND ORDER ON MOTION TO DISMISS

On March 9, 2023, Melissa Bogle ("Plaintiff" or "Ms. Bogle") filed suit against the

Connecticut Department of Mental Health and Addiction Services ("DMHAS") and the Chief

Executive Officer of Connecticut Valley Hospital ("CVH"), Lakisha Hyatt (collectively,

"Defendants") alleging violations of 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. §§ 1981

and 1983, and Conn. Gen. Stat. § 46a-60(b)(1) ("Connecticut Fair Employment Practices Act" or

"CFEPA"). Am. Compl., ECF No. 17 (Apr. 12, 2023) ("Am. Compl.").

Defendants have moved to dismiss the Amended Complaint. Mot. to Dismiss, ECF No.

26 (May 22, 2023) ("Mot. to Dismiss").

For the following reasons, the Court **GRANTS in part and DENIES in part**

Defendants' motion to dismiss.

The Title VII claim may proceed against DMHAS only, and for now, will include the

hostile work environment claim. The only remaining claim against Ms. Hyatt will be under

Section 1983. The CFEPA claim is dismissed.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Allegations

On or around October 28, 2005, Ms. Bogle, who identifies as black and African American, was hired as a mental health assistant for the State of Connecticut. Am. Compl. First Count ¶¶ 3, 7.

On or around August 8, 2020, two psychiatric patients allegedly attacked Ms. Bogle, when she was working alone in a unit at CVH with twenty-two psychiatric patients. *Id*. ¶¶ 8–9.

Ms. Bogle alleges that one of the patients ventured into the unit and Ms. Bogle attempted to verbally redirect her before the patient began screaming and shoved Ms. Bogle against a wall. *Id*. ¶¶ 10–11. As Ms. Bogle allegedly attempted to free herself from this patient's grasp, the patient allegedly fell to the floor without injury and another patient allegedly grabbed Ms. Bogle from behind. *Id*. ¶¶ 12, 16. Ms. Bogle also alleges that, at some point, she also hit the floor with extreme force, causing numerous serious physical injuries. *Id*. ¶ 13. The head nurse allegedly signaled for immediate assistance after being alerted to the altercation by another patient. *Id*. ¶ 12.

As a result of her injuries, Ms. Bogle allegedly missed six weeks of work. *Id*. ¶ 13. Nursing managers, who are white, allegedly wrote Ms. Bogle up for work rule violations stemming from the altercation. *Id*. ¶ 21. On or around September 28, 2020, after being cleared to return to full duty, Ms. Bogle was allegedly placed on administrative leave and investigated for patient abuse. *Id*. ¶ 14.

Following the investigation, DHMAS found significant fault with Ms. Bogle's response to the alleged attack, and she was terminated on December 16, 2020. *Id*. ¶¶ 18, 21. Upon

reviewing the investigation, Ms. Hyatt allegedly concurred with the recommendation to terminate Ms. Bogle and signed the termination letter. *Id*. Second Count ¶ 29.

Ms. Bogle alleges that she had no prior history of patient abuse in her fifteen years employed by DMHAS. *Id*. First Count ¶ 20.

**B.     Procedural Posture**

On March 9, 2023, Ms. Bogle filed her Complaint. Compl., ECF No. 1 (Mar. 9, 2023).

On April 7, 2023, Ms. Bogle filed a motion for leave to amend her Complaint, which the Court granted on April 12, 2023. Mot. to Amend, ECF No. 12 (Apr. 7, 2023); Order Granting Mot. to Amend, ECF No. 15 (Apr. 12, 2023).

On April 12, 2023, Ms. Bogle filed her Amended Complaint. Am. Compl.

On May 11, 2023, the parties filed a joint Rule 26(f) report, and the Court subsequently entered a scheduling order. Rule 26(f) Report, ECF No. 21 (May 11, 2023); Scheduling Order, ECF No. 25 (May 15, 2023).

On May 22, 2023, Defendants filed their motion to dismiss the Amended Complaint. Mot.

On July 12, 2023, Ms. Bogle filed a memorandum of law in opposition to Defendants' motion to dismiss. Mem. in Opp'n to Mot. to Dismiss, ECF No. 29-1 (July 12, 2023) ("Mem.").

On July 26, 2023, Defendants filed a reply in support of their motion to dismiss. Reply in Supp. of Mot. to Dismiss (July 26, 2023) ("Reply").

On August 24, 2023, Defendants filed a motion to stay discovery pending the Court's decision on the motion to dismiss. Mot. to Stay, ECF No. 31 (Aug. 24, 2023).

On September 13, 2023, Ms. Bogle filed an objection to Defendants' motion to stay. Obj. to Mot. to Stay, ECF No. 32 (Sept. 13, 2023).

On September 19, 2023, Defendants filed a reply in support of their motion to stay. Reply in Supp. of Mot. to Stay, ECF No. 35 (Sept. 19, 2023).

On September 20, 2023, the Court issued an order denying Defendants' motion to stay discovery in light of the issue raised in their motion to dismiss as to the sufficiency of the current pleadings. Order Denying Mot. to Stay, ECF No. 36 (Sept. 20, 2023).

On February 1, 2024, Defendants filed a consent motion to modify the scheduling order to extend the deadline for the close of discovery and the other remaining deadlines, which the Court granted on February 2, 2024. Mot. to Modify, ECF No. 37 (Feb. 1, 2024); Am. Scheduling Order, ECF No. 38 (Feb. 2, 2024).

## II.    STANDARD OF REVIEW

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *Id.*

"When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet*, 235 F.3d at 83). The Court may also, however, resolve disputed jurisdictional fact issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd.*

*of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

### B. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for

failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.   DISCUSSION

Defendants argue that Ms. Bogle's Amended Complaint should be dismissed because: (1) she cannot state a claim against Ms. Hyatt under Title VII; (2) she failed to state a discrimination claim under Title VII; (3) she failed to state a hostile work environment claim under Title VII; (4) she failed to state a claim under 42 U.S.C. §§ 1981 and 1983; (5) her CFEPA claims are barred by the Eleventh Amendment; (6) she is not entitled to a jury trial under CFEPA; and (7) Ms. Hyatt is entitled to qualified immunity. Mem. at 3–4.

The Court will address each argument in turn.

### A.   The Title VII Claims

#### 1.   *Title VII Claims Against Ms. Hyatt*

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of [among other grounds] such individual's race." 42 U.S.C. § 2000e-2(a)(1). "It is well-settled in the

Second Circuit that 'individuals are not subject to liability under Title VII.'" *Carmody v. Vill. of Rockville Ctr.*, 661 F. Supp. 2d 299, 326 (E.D.N.Y. 2009) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)).

Defendants argue that Ms. Bogle cannot sustain a claim against Ms. Hyatt under Title VII because it is well settled that Title VII does not impose liability on individuals. Mem. at 7.

In response, Ms. Bogle states that her Title VII claims are against DMHAS only and acknowledges that Ms. Hyatt is not subject to individual liability under Title VII. Opp'n at 6.

Accordingly, the Court will construe Count One of the Amended Complaint as a claim against DMHAS only, and proceed to address Defendants' remaining arguments under Title VII.

### 2. *Title VII Discrimination Claim Against DMHAS*

At the pleadings stage, Title VII requires a plaintiff asserting a discrimination claim to allege she "[1] is a member of a protected class, [2] was qualified, [3] suffered an adverse employment action, and [4] has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). The facts necessary to survive a motion to dismiss should align with the "reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Id*. Therefore, "the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination"; instead, the complaint only needs to support "a minimal inference of discriminatory motivation." *Id*.

Defendants argue that Ms. Bogle's Amended Complaint is insufficient to state a plausible discrimination claim under Title VII because she failed to allege any facts to establish a discriminatory motive by DMHAS. Mem. at 8.

Ms. Bogle argues that the factual allegations included in her Amended Complaint make it plausible that the was subject to discrimination by DMHAS, particularly the existence of similarly situated white employees who were less severely disciplined. Opp'n at 8–9.

In response, DMHAS argues that Ms. Bogle was required to—and did not—plead specifics about her comparators to demonstrate an inference of discrimination. Reply at 1.

The Court disagrees.

Comparators are similarly situated when the "employees are 'subject to the same workplace standards' and their 'circumstances bear a reasonably close resemblance.'" *Maynard v. Stonington Cmty. Ctr.*, No. 3:15-CV-483 (RNC), 2017 WL 1246330, at *2 (D. Conn. Mar. 31, 2017) (quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)).

"While courts are 'cautioned against deciding whether two comparators are similarly situated on a motion to dismiss,' a general allegation that plaintiffs were treated differently from those similarly situated is insufficient to survive a motion to dismiss[.]" *Servidio Landscaping, LLC v. City of Stamford*, No. 3:19-CV-01473 (KAD), 2020 WL 7246441, at *3 (D. Conn. Dec. 9, 2020) (quoting *Hu v. City of New York*, 927 F.3d 81, 97 (2d Cir. 2019)); *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (noting that the Supreme Court's decision in *Iqbal*, 556 U.S. at 679, requiring "a complaint allege facts sufficient to establish 'a plausible claim for relief'" rendered the Second Circuit's decision in *DeMuria v. Hawkes*, 328 F.3d 704, 707 (2d Cir. 2003) obsolete insofar as it held that an *Olech* claim was "adequately pled . . . even without specification of others similarly situated"); *see also Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 99 (S.D.N.Y. 2023) ("Identification of a 'generic class of [similarly situated] white . . . employees' that allegedly received better

treatment 'is insufficient even at the pleadings stage.'" (alterations in original) (citations omitted)).

In her Amended Complaint, Ms. Bogle alleges that she "is aware of other comparators, who happened to be white of color and Caucasian of race, who have committed egregious violations of Defendant's work rules, but who received far less severe discipline then that of termination, even when their conduct resulted in the patient being injured." Am. Compl. First Count ¶ 24.

From this allegation, the Court can reasonably infer that the comparators that Ms. Bogle identified are also subject to DMHAS's work rules. That alone does not create a plausible inference that they are "subject to the same performance evaluation and disciplinary standards," *Brown*, 756 F.3d at 230, or that the comparators "engag[ed] in misconduct of comparable seriousness," *Maynard*, 2017 WL 1246330, at *2, however, Ms. Bogle also alleges that the conduct of at least one comparator resulted in a patient injury. Am. Compl. First Count ¶¶ 24, 26 ("After a full Fact Finding was conducted by the [Commission on Human Rights and Opportunities], a Final Finding of Reasonable Cause was issued in favor of the Plaintiff, determining that DHMAS had issued lesser punishment to white employees who had caused actual harm to patients and who were given more consideration for their good working history . . . .").

Although that does not speak to the conduct itself, *see Blige v. City Univ. of New York*, No. 1:15-CV-08873 (GBD) (KHP), 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017), *report and recommendation adopted*, No. 1:15-CV-08873 (GBD) (KHP), 2017 WL 1064716 (S.D.N.Y. Mar. 21, 2017) (concluding that the plaintiff did not allege details sufficient to create a plausible inference as to whether a comparator's conduct was of comparable seriousness where the

plaintiff alleged only that "two females were involved in a physical altercation on the job. And

no one was arrested. Just let go and given another duty assignment elsewhere"), from the facts

that Ms. Bogle alleged—and drawing all reasonable inferences in her favor—the Court may infer

that, because the comparator's conduct resulted in a patient injury, it was of a similar or greater

seriousness to Ms. Bogle's conduct. *See Buon v. Spindler*, 65 F.4th 64, 83 (2d Cir. 2023)

("[W]ith respect to the issue of intent, '[t]he facts required by *Iqbal* to be alleged in the

complaint need not give plausible support to the ultimate question of whether the adverse

employment action was attributable to discrimination,' but rather 'need only give plausible

support to a minimal inference of discriminatory motivation.'" (quoting *Littlejohn*, 795 F.3d at

311) (other citation omitted))).

And although Ms. Bogle did not plead all facts necessary to determine whether the

comparators are similarly situated in all material respects, the alleged facts plausibly state a

claim of discrimination. *Cf. Brown*, 756 F.3d at 231 (determining that the plaintiff stated

plausible claim of discrimination where he did not plead any facts about the comparators' "job

function, experience, qualifications, [or] rate of pay" but did allege that the comparators worked

in his group and reported to the same supervisor). Thus, Ms. Bogle has sufficiently raised a

plausible inference of discrimination under Title VII.

Accordingly, the Court will deny Defendants' motion to dismiss Ms. Bogle's Title VII

discrimination claim.

### 3. *Title VII Hostile Work Environment Claim Against DMHAS*

In order to state an actionable hostile work environment claim, a plaintiff must allege that

he or she was subjected to harassment that was severe or pervasive enough "to alter the

conditions of the victim's employment and create an abusive working environment, and . . . that

a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (citations and internal quotation marks omitted). The plaintiff must demonstrate that the workplace atmosphere was "permeated with 'discriminatory intimidation, ridicule, and insult' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . .'" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

"Courts look at all circumstances to ascertain whether an environment is sufficiently hostile or abusive to support a claim." *Leibovitz v. N.Y. City Transit Auth.*, 252 F.3d 179, 188 (2d Cir. 2001). These circumstances include factors such as the frequency of the discriminatory conduct; the severity of the discriminatory conduct; whether the conduct is physically threatening or humiliating (as opposed to merely offensive); and whether it unreasonably interferes with an employee's work performance. *Harris*, 510 U.S. at 23. These factors are to be evaluated holistically, and no single one is required. *Id*.

Furthermore, the test for sufficiency of a hostile work environment claim has both subjective and objective prongs: the plaintiff must subjectively perceive the environment to be abusive, and the discriminatory conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment . . . . An environment that a reasonable person would [not] find hostile or abusive . . . is beyond Title VII's purview." *Id*. at 21.

Defendants argue that Ms. Bogle's allegations, as pled, are not sufficiently severe or pervasive enough to sustain a hostile work environment claim. Mem. at 14. Defendants also argue that Ms. Bogle has failed to adequately allege a nexus between her protected class or activity and her allegations. *Id*.

In response, Ms. Bogle argues that this inquiry is not one that is properly resolved at this initial stage. Opp'n at 10. Ms. Bogle also argues that the nexus requirement is satisfied by her allegation that African American employees were wrongfully terminated while similarly situated white employees received more favorable disciplinary outcomes. Opp'n at 11.

The Court agrees.

In her Amended Complaint, Ms. Bogle alleges that she "was subjected to a hostile work environment and disparate treatment due to the one-sided, biased and, frankly, slipshod investigation and subsequent discriminatory decision to terminate her by DMHAS, which was due, in substantial part, because of her race and color." Am. Compl. First Count ¶ 22. Ms. Bogle also alleges that she "is aware of other former employees of the Defendant, who are black of color and African American of race, being treated in the same harassive, hostile and disparate manner as she was with regard to slanted investigations, followed by discriminatory and wrongful terminations." *Id*. ¶ 23. In other words, Ms. Bogle's hostile work environment claim is based on her allegation that she was subject to a biased investigation, the subsequent decision to terminate her, and that other Black or African American employees were allegedly subject to the same.

Although Ms. Bogle allegedly was not in the workplace after the altercation due to her injury, subsequent administrative leave, and ultimate termination, *see Maron v. Legal Aid Soc'y*, 605 F. Supp. 3d 547, 565 (S.D.N.Y. 2022) (noting "that the fact that Plaintiff was on sabbatical and not actually present in the workplace . . . unavoidably reduces the degree of hostility Plaintiff experienced"), Ms. Bogle's knowledge of other black and African American former employees also subject to allegedly biased investigations and terminations could plausibly predate her absence and support her claim of a hostile work environment. *See Equal Emp. Opportunity*

*Comm'n v. United Health Programs of America, Inc.*, 14-CV-3673 (KAM) (JO), 2020 WL 1083771, at *5 (E.D.N.Y. Mar. 6, 2020) ("[A]n individual plaintiff who experiences a hostile work environment need not be the target of other instances of hostility to support her claim if the plaintiff has knowledge of hostility directed at other employees . . . .").

But Ms. Bogle must allege disparate treatment sufficient enough to constitute harassment severe or pervasive enough to alter the conditions of her employment and create an abusive working environment. Although a hostile work environment is a form of disparate treatment, *see Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir. 2001) ("Under Title VII, a hostile work environment is one form of disparate treatment on the basis of 'race, color, religion, sex, or national origin.'" (citing 42 U.S.C. § 2000e–2(a)(1))), Ms. Bogle does not cite any caselaw establishing that the inverse is true—that disparate treatment alone can support a hostile work environment claim. In any event, given the possibility that facts could emerge during the discovery process to support this particular claim, rather than dismiss it—especially since other claims also survive—the Court will exercise its inherent discretion and allow this claim to proceed to discovery, and determine its fate at a later stage of the case. *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

Accordingly, the Court will deny Defendants' motion to dismiss Ms. Bogle's Title VII hostile work environment claim.

### B.  The §§ 1981 and 1983 Claims

#### 1.  Section 1981 Claim Against Ms. Hyatt

"Section 1983 'constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units[.]'" *Williams v. New York City Hous. Auth.*, 61

F.4th 55, 70 (2d Cir. 2023) (citing *Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018)); *see also Williams v. State of Connecticut Dep't of Corr.*, No. 3:16-CV-01612 (VAB), 2017 WL 2838081, at *6 (D. Conn. June 30, 2017) ("The Second Circuit has reaffirmed the Supreme Court's holding in *Jett* and has declined to take up Section 1981 claims separately from Section 1983 claims when those Section 1981 claims are brought against state actors.").

Defendants argue that Ms. Bogle's claim against Ms. Hyatt under § 1981 must be dismissed because § 1983 provides the exclusive federal damages remedy for violations of the right guaranteed by § 1981. Mem. at 18.

In her opposition, Ms. Bogle does not argue that Ms. Hyatt is liable under § 1981 separate from her liability under § 1983. Opp'n at 13–14.

Accordingly, the Court will construe Count Two of the Amended Complaint as a claim under § 1983 and proceed to address Defendants' argument as to Ms. Bogle's § 1983 claim.

### 2. Section 1983 Claim Against Ms. Hyatt

"The Fourteenth Amendment, as made actionable by 42 U.S.C. § 1983, provides public employees with the right to be free from discrimination." *Buon*, 65 F.4th at 78 (internal quotation marks omitted) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). "A state employee acting in his official capacity is acting under color of state law." *Vega*, 801 F.3d at 88 (internal quotation marks and citation omitted). "Once the color of law requirement is met, a plaintiff's equal

14

protection claim parallels his Title VII claim, except that a § 1983 claim, unlike a Title VII

claim, can be brought against an individual." *Id.*

For a "discrimination claim to survive a motion to dismiss, 'absent direct evidence of

discrimination, what must be plausibly supported by facts alleged in the complaint is that the

plaintiff [(1)] is a member of a protected class, [(2)] was qualified, [(3)] suffered an adverse

employment action, and [(4)] has at least minimal support for the proposition that the employer

was motivated by discriminatory intent.'" *Buon*, 65 F.4th at 79  (quoting *Littlejohn*, 795 F.3d at

311).

Defendants argue that Ms. Bogle has not set forth allegations that Ms. Hyatt's own

conduct was intentionally discriminatory due to Ms. Bogle's race or color or that Ms. Hyatt's

own conduct was a but-for cause of the alleged disparate treatment or hostile work environment.

Mem. at 19–21.

In response, Ms. Bogle argues that the allegations in her Amended Complaint raise a

plausible inference that Ms. Hyatt intended to discriminate against Ms. Bogle based on her race

or color. Opp'n at 13–14.

The Court disagrees.

"To state a claim that the discrimination was 'because of' the protected characteristic at

issue, 'a plaintiff must allege that the employer took adverse action against her at least in part for

a discriminatory reason, and she may do so by [either] alleging facts that *directly* show

discrimination or facts that *indirectly* show discrimination by giving rise to a plausible inference

of discrimination.'" *Buon*, 65 F.4th at 83 (quoting *Vega*, 801 F.3d at 87); *see also Mallison v.

Connecticut Off. of Early Childhood*, 634 F. Supp. 3d 21, 36–37 (D. Conn. 2022) ("A plaintiff

must also allege facts sufficient to show that the 'supervisor's actions were the proximate cause

of the plaintiff's constitutional deprivation,' and that the behavior constituted intentional

discrimination on the basis of a protected characteristic." (quoting *Raspardo v. Carlone*, 770

F.3d 97, 116 (2d Cir. 2014))).

Ms. Bogle alleges that her termination "was done because of her African American race

and her color, which is black and as such was discriminatory." Am. Compl. Second Count ¶ 31.

She also alleges that Ms. Hyatt "was well aware of the clean employment record of the Plaintiff,

as well as the comparatively lesser disciplinary measures taken against similarly situated white

employees who committed more egregious acts against patients and, nonetheless, decided to

terminate the Plaintiff . . . ." *Id*. ¶ 32.

Ms. Bogle's single non-conclusory allegation against Ms. Hyatt—that she concurred with

the investigation and signed the termination letter while aware of Ms. Bogle's employment

record and that of her comparators—is sufficient to state a plausible inference of discrimination.

*See Laurant v. City of New York*, No. 17-CV-5740 (KAM) (JO), 2019 WL 1364230, at *8

(E.D.N.Y. Mar. 26, 2019) (stating, in the context of a § 1983 claim, that "[t]he more favorable

treatment of similarly situated employees or candidates not in a plaintiff's protected group can

give rise to an inference of discrimination" (citing *Littlejohn*, 795 F.3d at 312)). Because the

same analytical framework of Title VII applies to the disparate treatment analysis here, *see

Weber v. City of New York*, 973 F. Supp. 2d 227, 274 (E.D.N.Y. 2013) ("[T]he same analytical

framework applies whether the disparate treatment claim is brought under § 1983 or Title VII."

(citing *Abdul–Hakeem v. Parkinson*, 523 Fed. Appx. 19, 20 (2d Cir. 2013) (summary order))),

Ms. Bogle has stated a claim under § 1983 for the same reasons as under Title VII. *See Feingold

v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) ("Once action under color of state law is

established, Feingold's equal protection claim parallels his Title VII claim. The elements of one are generally the same as the elements of the other and the two must stand or fall together.").

Accordingly, the Court will deny Defendants' motion to dismiss Ms. Bogle's § 1983 claim.

### C.  Qualified Immunity

"A government official is entitled to immunity from suit whenever (1) her conduct 'did not violate clearly established law,' or (2) 'it was objectively reasonable for [the official] to believe that his action did not violate such law.'" *Naumovski v. Norris*, 934 F.3d 200, 210 (2d Cir. 2019) (citing *Russo  v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)).

"Although courts should resolve the question of qualified immunity at the 'earliest possible stage in litigation,' 'a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route[.]'" *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013) (citations omitted). "Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

Defendants argue that claims against Ms. Hyatt is protected by qualified immunity because Ms. Bogle failed to allege that Ms. Hyatt violated any clearly established rights or that a reasonable official in her position would have understood that she was violating the Plaintiff's rights. Mem. at 27.

In response, Ms. Bogle argues that Ms. Hyatt is only entitled to qualified immunity if she can show that she acted reasonably given the well-established right that Ms. Bogle had to equal protection of the law. Opp'n at 19.

The Court agrees.

Because Ms. Bogle has plausibly alleged a constitutional violation by Ms. Hyatt—again, that she terminated Ms. Bogle while aware of Ms. Bogle's employment record and that of her comparators—the Court cannot conclude that Ms. Hyatt did not violate clearly established law, or that it was objectively reasonable for her to believe her actions did not violate clearly established law. *See Saez v. Jud. Branch*, No. 3:21-CV-915 (JAM), 2022 WL 3369737, at *6 (D. Conn. Aug. 16, 2022) ("[I]ntentional race-based discrimination in the employment context violates equal protection rights that were clearly established at the time of [the] alleged misconduct in July 2018." (citing *United States v. City of New York*, 717 F.3d 72, 92 (2d Cir. 2013))); *cf. Watkins v. Town of Webster*, 592 F. Supp. 3d 96, 118 (W.D.N.Y. 2022) (determining that the court could not "conclude that the individual defendants' actions did not violate clearly established law, or that it was objectively reasonable for them to believe their actions did not violate clearly established law" where the plaintiff "plausibly alleged constitutional violations"); *Griffin v. New York*, 122 F. Appx. 533, 535 (2d Cir. 2004) (summary order) (concluding that the district court properly refused to grant qualified immunity as the right to be free from the alleged adverse employment action based on race—namely, the defendants imposing a probationary period on the plaintiff and not on a similarly situated white employee—was clearly established).

Accordingly, Ms. Hyatt is not entitled to qualified immunity at this juncture.

### D.  The CFEPA Claim

The United States Supreme Court has established that, under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citation omitted). This immunity applies unless the state has "consented to the litigation or Congress has permissibly enacted legislation specifically overriding the state's immunity." *Huang v. Johnson*, 251 F.3d 65, 69 (2d Cir. 2001) (citing *Russell v. Dunston*, 896 F.2d 664, 667 (2d Cir. 1990)). "A claim against a state agency is considered a claim against the state and implicates the Eleventh Amendment because the state is a 'real, substantial party in interest.'" *Mulero v. Connecticut, Dep't of Educ.*, 253 F.R.D. 33, 37 (D. Conn. 2008) (quoting *Pennhurst*, 465 U.S. at 101).

"[I]t is well-established that the State of Connecticut has not waived its Eleventh Amendment immunity from CFEPA suits in federal court." *Owoeye v. Connecticut*, No. 3:14-CV-0664 (VLB), 2016 WL 1089179, at *4 (D. Conn. Mar. 18, 2016).

Defendants argue that, to the extent that Ms. Bogle brings her CFEPA claim against DMHAS, the claim is barred by the Eleventh Amendment. Mem. at 22.

In response, Ms. Bogle argues that because she is seeking a declaratory judgment and a permanent injunction prohibiting DMHAS from ongoing discriminatory, disparate, and hostile conduct, her CFEPA claim falls within the *Ex parte Young* exception to sovereign immunity. Opp'n at 16.

The Court disagrees.

As a preliminary matter, Ms. Bogle's CFEPA claim names "the Defendant, through its agents, servants, and/or employees." Am. Compl. Third Count ¶ 29. In her memorandum of law

in opposition to Defendants' motion to dismiss, Ms. Bogle clarifies that her CFEPA claim "is directed at the Defendant DMHAS, *through* its agent, Co-defendant Hyatt . . . ." Opp'n at 14 (emphasis in original). Additionally, Ms. Bogle does not respond to Defendants' argument as to the viability of a CFEPA claim against Ms. Hyatt in her individual capacity. Thus, the Court construes this claim as one against Ms. Hyatt in her official capacity only, which is, in effect, a claim against DMHAS. *See Giraud v. Cuevas*, No. 3:20-CV-906(SRU), 2021 WL 1535694, at *5 (D. Conn. Apr. 19, 2021) ("The principle of sovereign immunity applies to lawsuits against a state as well as to lawsuits against a state official in his or her official capacity. '[B]ecause the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state.'" (quoting *Miller v. Egan*, 828 A.2d 549, 558 (2003))).

There is, however, an exception to Eleventh Amendment immunity for "when the lawsuit requests declaratory or injunctive relief 'challenging the constitutionality of a state official's actions in enforcing state law,' otherwise known as the *Ex parte Young* exception." *Mallison*, 634 F. Supp. 3d at 39 (quoting *W. Mohegan Tribe & Nation v. Orange Cnty.*, 395 F.3d 18, 21 (2d Cir. 2004)). "In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 636 (2002) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 298–299 (1997) (O'Connor, J., concurring) (Souter, J., dissenting)).

In her Amended Complaint, Ms. Bogle alleges as a part of her CFEPA claim that her termination and DMHAS's "ongoing disparate treatment of employees of color within its

workforce" are violations of "the equal protection of law as guaranteed by the United States Constitution to all citizens of this country." Am. Compl. at 7 ¶ 29.

Although Ms. Bogle invokes the language of the Equal Protection Clause in her CFEPA claim, that does not change the reality that she is alleging a violation of state law arising from her termination. And *Ex parte Young* does not apply to claims alleging a violation of state law, rather than federal law or constitutional rights. *Cf. City of Shelton v. Collins*, No. 3:12-CV-1176 (JBA), 2014 WL 1032765, at *5 (D. Conn. Mar. 14, 2014) (concluding that the plaintiffs did "not plausibly allege an ongoing violation of federal law which would permit federal review under *Ex parte Young*" where their "challenge [was] to the manner in which the CHRO handles employment discrimination complaints under the CFEPA as construed by the Connecticut Supreme Court"), *aff'd sub nom. City of Shelton v. Hughes*, 578 F. Appx. 53 (2d Cir. 2014) (summary order). In other words, Ms. Bogle is not seeking to enjoin any state official from enforcing any state law that runs afoul of the constitution, as required to overcome sovereign immunity. *See Abbey v. Rowland*, 359 F. Supp. 2d 94, 101 (D. Conn. 2005) ("The injunctive relief, if granted, would not prevent any state official from enforcing any state law that runs afoul of the constitution.").

Accordingly, the Court will grant Defendants' motion to dismiss Ms. Bogle's CFEPA claim.

## IV.   CONCLUSION

For the reasons above, the Court **GRANTS in part and DENIES in part** Defendants' motion to dismiss.

The Title VII claim may proceed against DMHAS only, and for now, will include the hostile work environment claim. The only remaining claim against Ms. Hyatt will be under Section 1983. The CFEPA claim is dismissed.


**SO ORDERED** at New Haven, Connecticut, this 22nd day of March, 2024.

　　　　　　　　　　　　　　　　　　 /s/ Victor A. Bolden
　　　　　　　　　　　　　　　　　　VICTOR A. BOLDEN
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE